UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/25/14

WELLS FARGO BANK, NATIONAL ASSOCIATION, as trustee,

Interpleader Plaintiff,

- against -

DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC, WATERFALL ASSET MANAGEMENT LLC, THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, STS PARTNERS FUND, LP, BEDFORD CMBS ACQUISITIONS LLC, CEDE & CO., as holder of certain Certificates and nominee name of The Depository Trust Company, and DOES 1 through 50, holders of beneficial interests in the Certificates,

Interpleader Defendants.

**OPINION AND ORDER**

13 Civ. 5981 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. BACKGROUND

This case arises out of a dispute between Bedford CMBS Acquisitions LLC ("Bedford") and Davidson Kempner Capital Management LLC, Waterfall Asset Management LLC, and STS Partners Fund, LP (together, the "DWS Parties") over Bedford's right to purchase certain securities administered by Wells

Fargo National Bank Association ("Wells Fargo"). Wells Fargo brings this interpleader action[1] against Bedford, the DWS parties, and other certificate holders to settle any claims stemming from this dispute and to restrain the parties from bringing a separate suit against Wells Fargo. The DWS Parties bring a crossclaim against Bedford challenging Bedford's right to exercise a purchase option. Bedford moves for judgment on the pleadings to dismiss Wells Fargo's claims and the DWS Parties' crossclaim pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, Bedford's motion for judgment on the pleadings is GRANTED.

Wells Fargo holds certain pooled mortgage-backed securities certificates on behalf of depositor GS Mortgage Securities Corporation II,[2] and serves as trustee pursuant to the Commercial Mortgage-Backed Securities Pass-

---

[1] Although Wells Fargo has pled jurisdiction under 28 U.S.C. § 1332, it has not deposited the Disputed Securities or posted bond with the Court. *See* 28 U.S.C. § 1332(a)(2). However, this Court has jurisdiction over the proceeding pursuant to Federal Rule of Civil Procedure 22 because there is complete diversity of citizenship between the parties, and the Court acts *sua sponte* to convert the action from "statutory" to "rule" interpleader. *See Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994).

[2] *See* Commercial Mortgage-Backed Securities Pass-Through Certificates, Series 2006-RR2 Pooling Agreement ("Pooling Agreement"), Ex. 1 to 12/20/13 Declaration of Danielle C. Lesser, counsel for Bedford, in Support of Bedford's Motion to Dismiss, § 2.01.

Through Certificates, Series 2006-RR2 Pooling Agreement (the "Pooling Agreement").[3] The Pooling Agreement can be amended by Wells Fargo and the depositor without the consent of the certificate holders "to cure any ambiguity or mistake."[4]

The Pooling Agreement provides for tiered classes of certificates which offer different yields and risks.[5] The DWS Parties hold the highest class of certificates.[6] Bedford holds the most junior class of certificates.[7] The Agreement ameliorates the disadvantages of holding the most junior class of certificates[8] by providing that, "[a]s of any date of determination," the majority holder of the most junior class will be the Directing Securityholder.[9]

---

3 *See id.* § 1.01 ("Trustee").

4 Pooling Agreement § 7.01.

5 *See* Pooling Agreement §§ 3.02, 3.03.

6 *See* Amended Interpleader Complaint ¶¶ 5, 6, 8.

7 *See id.* ¶ 9.

8 *See* Memorandum of Law in Support of Bedford's Motion for Judgment on the Pleadings ("Bedford Mem."), at 6.

9 Pooling Agreement § 1.01 (defining "Directing Securityholder" as "the holder or holders of the most junior [class of certificates] then outstanding that has an outstanding Certificate Balance at least equal to 25% of the initial Certificate Balance thereof").

Pursuant to section 7.13 of the Pooling Agreement, the Directing Securityholder receives an assignable option to purchase a pooled security that is deemed defaulted or imminently defaulted.[10] "[T]he option will be deemed to be irrevocably waived" if the Directing Securityholder does not give notice of receipt within ten business days of receiving notice of the default.[11] When a Directing Securityholder gives timely notice, Wells Fargo performs a "Fair Value Determination" of the defaulted securities in accordance with the procedures outlined in section 7.13.[12] The Directing Securityholder has ten business days from receipt of notice of the Fair Value Determination to give Wells Fargo notice that it is exercising the option.[13] Without such notice, the option "will be deemed to be irrevocably waived,"[14] however, a "different or additional [default] event" can give rise to a new purchase option "without regard to the prior waiver."[15]

---

10 *See* Pooling Agreement § 7.13.

11 *Id.*

12 *See id.*

13 *See id.*

14 *Id.*

15 *Id.*

In July 2013, the Directing Securityholder at the time requested a Fair Value Determination for certain defaulted securities (the "Disputed Securities"), but did not exercise its purchase option within ten business days.[16] "On August 9, 2013, Bedford notified Wells Fargo that it had become the Directing Securityholder."[17] It requested a Fair Value Determination for the Disputed Securities four days later.[18] "On August 20, 2013, Wells Fargo provided Bedford with notice of the Fair Value of the Disputed [Securities]."[19] Bedford notified Wells Fargo the next day that it intended to exercise its purchase option.[20] Wells Fargo notified Bedford that it would accept exercise of the option, and the parties agreed on a closing date for the purchase.[21] Wells Fargo expressed no concern at that time that Bedford's option to purchase the Disputed Securities had been waived.[22]

---

16 *See* Amended Interpleader Complaint ¶ 16.

17 *Id.* ¶ 17.

18 *See id.* ¶ 18.

19 *Id.* ¶ 19.

20 *See id.* ¶ 20.

21 *See* Bedford Mem. at 8.

22 *See id.*

The DWS Parties subsequently informed Wells Fargo that they objected to Bedford's purchase of the Disputed Securities.[23] Wells Fargo initiated this action, claiming that the Pooling Agreement is "ambiguous with respect to Bedford's right to exercise the Purchase Option with respect to the Disputed [Securities]. . . ."[24] In their answer, the DWS Parties brought a crossclaim against Bedford seeking a declaratory judgment that Bedford's purchase option was void due to the previous Directing Securityholder's waiver.[25] Nothing in the Pooling Agreement explicitly addresses this contingency.

## II. APPLICABLE LAW

### A. Legal Standard

At any time after the pleadings are closed, but before trial commences, a party may move for judgment on the pleadings under Rule 12(c).[26] "A grant of a

---

23 *See* Amended Interpleader Complaint ¶ 21.

24 *Id.* ¶ 23.

25 *See* Answer, Crossclaim and Counterclaim of the DWS Parties ¶ 38. The DWS Parties also seek "a declaration that the Purchase Option cannot be exercised unless and until the Trustee makes the proper inquiry for determination of Fair Value as required under the Pooling Agreement, and shares that information with the DWS Parties." *Id.* ¶ 54.

26 *See* Fed. R. Civ. P. 12(c).

motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'"[27]

The legal standards of review for motions to dismiss and motions for judgment on the pleadings "'are indistinguishable.'"[28] "On a motion to dismiss or for judgment on the pleadings [courts] 'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"[29] Courts are not bound to accept as true legal conclusions couched as factual allegations.[30] The court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[31]

---

[27] *Dargahi v. Honda Lease Trust*, 370 Fed. App'x 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

[28] *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003)).

[29] *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

[30] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[31] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### B. Applicable Law

"Under New York law, 'the initial interpretation of a contract is a matter of law for the court to decide.'"[32] The court's "'fundamental objective' is to determine the intent of the contracting parties 'as derived from the language employed in the contract.'"[33] "'Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous . . . .'"[34] "Even where a contingency has been omitted, [the court] will not necessarily imply a term since 'courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'"[35]

---

[32] *Overseas Direct Import Co. v. Family Dollar Stores Inc.*, 929 F. Supp. 2d 296, 313 (S.D.N.Y. 2013) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)).

[33] *Consolidated Edison, Inc. v. Northeast Util.*, 426 F.3d 524, 527 (2d Cir. 2005) (quoting *Abiele Contracting v. New York City Sch. Constr. Auth.*, 91 N.Y.2d 1, 9 (1997)).

[34] *Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29 (2008) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).

[35] *Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195, 199 (2001) (quoting *Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 654 (2d Dep't 1983)) (some quotation marks omitted).

### C. Ambiguity of Contract Terms

A district court can only construe a contract as a matter of law "'where the language and the inferences to be drawn from it are unambiguous.'"[36] "[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."[37] "'A contract is not ambiguous where there is no reasonable basis for a difference of opinion.'"[38] "The mere assertion of an ambiguity does not suffice to make an issue of fact."[39] Moreover, a "contract's failure to address a contingency does not create an ambiguity where [the] contract's terms were otherwise unambiguous."[40]

---

[36] *4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 246 (S.D.N.Y. 2011) (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, Eng.*, 136 F.3d 82, 86 (2d Cir. 1998)).

[37] *Lockheed Martin Corp. v. Retail Holdings, N. V.*, 639 F.3d 63, 69 (2d Cir. 2011).

[38] *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (quoting *Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 424 (2d Cir. 1998)).

[39] *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

[40] *In re Coudert Bros.*, 487 B.R. 375, 392 (Bankr. S.D.N.Y. 2013) (citing *Reiss*, 97 N.Y.2d at 199). *Accord Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) ("'[C]ourts should be extremely reluctant to

### D. Waiver of Contractual Rights

"Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned."[41] "Waivers of rights will not be inferred unless the intent to waive is clear."[42] "The Second Circuit has cautioned that '[w]aiver of rights under a contract should not be lightly presumed.'"[43]

## III. DISCUSSION

Wells Fargo submits that the Pooling Agreement is ambiguous and seeks relief that would shield it from liability stemming from disposition of the Disputed Securities. The DWS Parties argue that Bedford's purchase option for the Disputed Securities was voided by the previous Directing Securityholder's

---

interpret an agreement as impliedly stating something which the parties have neglected to specifically include.'") (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 72 (1978)).

[41] *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (citation omitted).

[42] 22A New York Jurisprudence 2d, Contracts § 380 (citing *Fundamental Portfolio Advisors*, 7 N.Y.3d at 96; *Team Mktg. USA Corp. v. Power Pact, LLC*, 839 N.Y.S.2d 242 (3d Dep't 2007); *Navillus Tile, Inc. v. Turner Constr. Co.*, 770 N.Y.S.2d 3 (1st Dep't 2003)).

[43] *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 34 (S.D.N.Y. 2010) (quoting *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006)) (some quotation marks omitted).

waiver.[44] Bedford argues that the Pooling Agreement unambiguously gave rise to a valid purchase option for the Disputed Securities.

Under the plain terms of the Pooling Agreement, Bedford's purchase option for the Disputed Securities was not waived by the previous Directing Securityholder. The title of Directing Securityholder changes depending on the date of determination.[45] Although the Pooling Agreement contemplates that different entities will hold this title, section 7.13 does not include any language indicating that waiver by one Directing Securityholder will bind the next. Failure to specifically address this scenario does not render the Pooling Agreement "ambiguous."[46] Read in the context of the entire Pooling Agreement, section 7.13

---

44 Bedford contends that the DWS Parties are barred from bringing this crossclaim by the Pooling Agreement, which requires that two-thirds of holders of the same class of certificates make a written request upon Wells Fargo before a certificate holder may bring a lawsuit based on the Pooling Agreement. *See* Reply Memorandum of Bedford in Further Support of Its Motion for Judgment on the Pleadings, at 3; Pooling Agreement § 7.02. Because Bedford's motion to dismiss the DWS crossclaim succeeds on the merits for the same reasons as its motion to dismiss Wells Fargo's claims, the Court need not address the procedural requirements of the Pooling Agreement.

45 *See* Pooling Agreement § 1.01.

46 *See In re Coudert Bros.*, 487 B.R. at 392.

describes the circumstances in which a Directing Securityholder can waive *its own* purchase option.[47]

In addition to interpolating a term not in the Pooling Agreement, the DWS Parties' construction of section 7.13 would permit a Directing Securityholder to divest all future Directing Securityholders of a right granted by the Pooling Agreement. This Court declines to construe a waiver provision so broadly.

Wells Fargo's actions lend credence to the Court's construction of the Pooling Agreement. Despite having the express power to amend the Pooling Agreement "to cure any ambiguity,"[48] Wells Fargo apparently never sought to do so. Furthermore, by performing a Fair Value Determination for Bedford, accepting Bedford's notice of exercise, and failing to raise any concerns about waiver, Wells

---

[47] The DWS Parties argue that this interpretation renders meaningless the clause in section 7.13 which says that a "different or additional [default] event" can resurrect a waived purchase option. *See* Memorandum of Law in Support of the DWS Parties' Opposition to Bedford's Motion for Judgment on the Pleadings ("Opp. Mem."), at 12. Because this is the only mention in section 7.13 of a way in which an "irrevocable waiver" can be remedied, the DWS Parties contend that Bedford's reading adds an unintended waiver exception. But this section merely defines the circumstances under which a Directing Securityholder's purchase option will be revived following its own waiver. Thus, this term is not rendered meaningless, and the argument is unavailing.

[48] Pooling Agreement § 7.01.

Fargo demonstrated that it believed Bedford's purchase option was valid. That it now claims the Pooling Agreement is ambiguous does not create an issue of fact.[49]

Finally, the DWS Parties argue that this motion cannot succeed because Bedford has not provided information regarding "customs, practices, usages and terminology as generally understood in this particular trade or business."[50] Because the contract is unambiguous, extrinsic evidence is neither necessary nor permissible.[51]

## IV. CONCLUSION

For the foregoing reasons, Bedford's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to close this motion (Docket No. 36). A conference is scheduled for March 25, 2014 at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
February 25, 2014

---

49 *See Palmieri*, 445 F.3d at 187.

50 Opp. Mem. at 14.

51 *See Greenfield,* 98 N.Y.2d at 569.