UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as trustee,

         Interpleader Plaintiff,

- against -

DAVIDSON KEMPNER CAPITAL
MANAGEMENT LLC, WATERFALL
ASSET MANAGEMENT LLC, THE
NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, STS
PARTNERS FUND, LP, BEDFORD
CMBS ACQUISITIONS LLC, CEDE &
CO., as holder of certain Certificates and
nominee name of The Depository Trust
Company, and DOES 1 through 50, holders
of beneficial interests in the Certificates,

         Interpleader Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/14

**OPINION AND ORDER**

13 Civ. 5981 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    BACKGROUND

        This case arises out of a dispute among Bedford CMBS Acquisitions LLC ("Bedford") and The Northwestern Mutual Life Insurance Company ("Northwestern"), Davidson Kempner Capital Management LLC, Waterfall Asset Management LLC, and STS Partners Fund, LP (together, the "DWS Parties") over

1

Bedford's right to purchase certain securities administered by Wells Fargo National Bank Association ("Wells Fargo"). Wells Fargo brings this interpleader action[1] against Bedford, the DWS parties, Northwestern, and other certificate holders to settle any claims stemming from this dispute and to restrain the parties from bringing a separate suit against Wells Fargo. The DWS Parties bring a crossclaim against Bedford challenging Bedford's right to exercise a purchase option. Bedford moves for judgment on the pleadings to dismiss Wells Fargo's interpleader action and the DWS Parties' crossclaim pursuant to Federal Rule of Civil Procedure 12(c).[2]

---

[1]   Although Wells Fargo has pled jurisdiction under 28 U.S.C. § 1335, it has not deposited the Disputed Securities or posted a bond with the Court. *See* 28 U.S.C. § 1335(a)(2). In any event, this Court has jurisdiction over the proceeding pursuant to Federal Rule of Civil Procedure 22 because there is complete diversity of citizenship among the parties. This Court also has the power to convert the action from a "statutory" to a "rule" interpleader. *See Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994).

[2]   Bedford's motion to dismiss Wells Fargo's interpleader action is granted because Wells Fargo did not oppose. However, I note that in its interpleader complaint, Wells Fargo specifically said that it does "not take[] a position with respect to the disputed issue" and is "ready and willing to treat the disputed assets in such manner as the Court shall direct." Amended Interpleader Complaint ("Compl.") ¶¶ 1 and 24.

Wells Fargo holds certain pooled mortgage-backed securities certificates on behalf of depositor GS Mortgage Securities Corporation II,[3] and serves as trustee pursuant to the Pooling Agreement.[4] The Pooling Agreement provides for tiered classes of certificates which offer different yields and risks.[5] The Agreement ameliorates the disadvantages of holding junior classes of certificates[6] by providing that, "[a]s of any date of determination," the majority holder of the most junior class that has an outstanding certificate balance of at least 25% of the initial certificate balance will be the Directing Securityholder.[7] Bedford is currently the Directing Securityholder.[8]

---

[3] *See* Commercial Mortgage-Backed Securities Pass-Through Certificates, Series 2006-RR2 Pooling Agreement ("Pooling Agreement"), Ex. 1 to 12/20/13 Declaration of Danielle C. Lesser, counsel for Bedford, in Support of Bedford's Motion to Dismiss, § 2.01.

[4] *See id.* § 1.01 ("Trustee").

[5] *See id.* §§ 3.02, 3.03.

[6] *See* Memorandum of Law in Support of Bedford's Motion for Judgment on the Pleadings ("Bedford Mem."), at 6.

[7] Pooling Agreement § 1.01 (defining "Directing Securityholder" as "the holder or holders of the most junior Class of Principal Balance Certificates then outstanding that has an outstanding Certificate Balance at least equal to 25% of the initial Certificate Balance thereof").

[8] *See* Compl. ¶ 9.

Pursuant to section 7.13 of the Pooling Agreement, the Directing Securityholder has an assignable option to purchase a pooled security that has been deemed defaulted or imminently defaulted.[9] The option price is either: "(i) if the Trustee has not yet determined the Fair Value of the [defaulted security], the unpaid principal amount thereof plus accrued and unpaid interest thereon," or "(ii) if the Trustee has made a Fair Value determination, the Fair Value of the" defaulted security as determined by the trustee in accordance with the procedures outlined in section 7.13.[10]

"If the Directing Securityholder has not provided notice to the Trustee of its exercise of the Purchase Option within 10 Business Days of its receipt of notice that a [certificate has become a defaulted security], the Purchase Option calculated pursuant to clause (i) above will be deemed to be irrevocably waived . . . . ."[11] If a Directing Securityholder has received notice of the Fair Value determination, but "does not provide notice to the Trustee of its exercise of the Purchase Option within 10 Business Days of its receipt of the notice of the

---

[9] *See* Pooling Agreement § 7.13.

[10] *Id.*

[11] *Id.*

4

determination of the Fair Value . . . the Purchase Option will be deemed to be irrevocably waived with respect to the [defaulted security]."[12]

In July 2013, the Directing Securityholder (previous to Bedford) requested a Fair Value determination for certain defaulted securities (the "Disputed Securities"). Neither Wells Fargo nor the DWS Parties allege that this Directing Securityholder ever received notice of the Fair Value of the Disputed Securities.[13] It is undisputed that the then Directing Securityholder did not exercise its option to purchase the Disputed Securities for the price of the unpaid principal plus accrued and unpaid interest, as calculated pursuant to clause (i).

"On August 9, 2013, Bedford notified Wells Fargo that it had become the Directing Securityholder."[14] Four days later, it requested a Fair Value determination for the Disputed Securities.[15] "On August 20, 2013, Wells Fargo provided Bedford with notice of the Fair Value of the Disputed [Securities]."[16]

---

[12] *Id.*

[13] *See* Compl. ¶ 16; *See* Answer, Crossclaim and Counterclaim of the DWS Parties ("Answer, Crossclaim & Counterclaim") ¶ 31; Reply Memorandum of Bedford in Further Support of Its Motion for Judgment on the Pleadings ("Bedford Reply Mem."), at 8.

[14] Compl. ¶ 17.

[15] *See id.* ¶ 18.

[16] *Id.* ¶ 19.

The next day Bedford notified Wells Fargo that it intended to exercise its purchase option.[17] Wells Fargo then notified Bedford that it would accept exercise of the option, and the parties agreed on a closing date for the purchase.[18] Wells Fargo expressed no concern at that time that Bedford's option to purchase the Disputed Securities may have been waived by the previous Directing Securityholder.[19]

The DWS Parties and Northwestern subsequently informed Wells Fargo that they objected to Bedford's purchase of the Disputed Securities.[20] Wells Fargo initiated this action, claiming that the Pooling Agreement is "ambiguous with respect to Bedford's right to exercise the Purchase Option with respect to the Disputed [Securities]. . . ."[21] In their answer, the DWS Parties brought a crossclaim against Bedford seeking a declaratory judgment that Bedford's purchase option was void due to the previous Directing Securityholder's alleged waiver.[22]

---

[17] *See id.* ¶ 20.

[18] *See* Bedford Mem. at 8.

[19] *See id.*

[20] *See* Compl. ¶ 21.

[21] *Id.* ¶ 23.

[22] *See* Answer, Crossclaim & Counterclaim ¶ 38.

## II. APPLICABLE LAW

### A. Legal Standard

At any time after the pleadings are closed, but before trial commences, a party may move for judgment on the pleadings under Rule 12(c).[23] "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'"[24]

The legal standards of review for motions to dismiss and motions for judgment on the pleadings "'are indistinguishable.'"[25] "On a motion to dismiss or for judgment on the pleadings [courts] 'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"[26] Courts are not bound to accept as true legal conclusions couched as factual allegations.[27] The

---

[23] *See* Fed. R. Civ. P. 12(c).

[24] *Dargahi v. Honda Lease Trust*, 370 Fed. App'x 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

[25] *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003)).

[26] *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

[27] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[28]

**B.     Applicable Law**

"Under New York law, 'the initial interpretation of a contract is a matter of law for the court to decide.'"[29]  The court's "'fundamental objective' is to determine the intent of the contracting parties 'as derived from the language employed in the contract.'"[30]  "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned."[31]  "The Second Circuit has cautioned that '[w]aiver of rights under a contract should not be lightly presumed.'"[32]

---

[28]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[29]     *Overseas Direct Import Co. v. Family Dollar Stores Inc.*, 929 F. Supp. 2d 296, 313 (S.D.N.Y. 2013) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)).

[30]     *Consolidated Edison, Inc. v. Northeast Util.*, 426 F.3d 524, 527 (2d Cir. 2005) (quoting *Abiele Contracting v. New York City Sch. Constr. Auth.*, 91 N.Y.2d 1, 9 (1997)).

[31]     *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (citation omitted).

[32]     *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 34 (S.D.N.Y. 2010) (quoting *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006)) (some quotation marks omitted).

## III. DISCUSSION

The DWS Parties[33] argue that Bedford's purchase option for the Disputed Securities was waived by the failure of the previous Directing Securityholder to exercise its purchase option after requesting a Fair Value determination.[34] Bedford argues that the Pooling Agreement gave rise to a valid purchase option for the Disputed Securities, which it exercised.

Under the plain terms of the Pooling Agreement, the assignable purchase option for the Disputed Securities was not waived by the previous Directing Securityholder because that entity never received a Fair Value determination for the Disputed Securities. The previous Directing Securityholder undisputedly waived the option to purchase at a price calculated pursuant to clause (i) of section 7.13 by failing to notice its intent to purchase the security at that price within ten business days of receiving notice of default. But there is no evidence

---

[33] Northwestern has also opposed Bedford's motion adopting the DWS Parties' arguments. *See* Northwestern's Memorandum in Opposition to Bedford's Motion for Judgment on the Pleadings.

[34] Bedford contends that the DWS Parties are barred from bringing this crossclaim by the Pooling Agreement, which requires that two-thirds of holders of the same class of certificates make a written request upon Wells Fargo before a certificate holder may bring a lawsuit based on the Pooling Agreement. *See* Bedfrord Reply Mem. at 3; Pooling Agreement § 7.02. Because Bedford's motion to dismiss the DWS crossclaim succeeds on the merits, the Court need not address the procedural requirements of the Pooling Agreement.

that the Directing Securityholder ever received a Fair Value determination in response to its request. Thus, the previous Directing Security holder never waived the option to purchase the Disputed Securities at a Fair Value. That purchase option was available for Bedford to exercise.

The DWS Parties also filed a counterclaim against Wells Fargo seeking "a declaration that the Purchase Option cannot be exercised unless and until the Trustee makes the proper inquiry for determination of Fair Value as required under the Pooling Agreement, and shares that information with the DWS Parties."[35] The DWS Parties are not entitled to this declaration because no provision of the Pooling Agreement requires Wells Fargo to share information about how the Fair Value of any particular defaulted security is determined with other certificateholders before a Purchase Option can be exercised. Bedford's Purchase Option was properly exercised.

If the DWS Parties believe that Wells Fargo did not determine the fair value in accordance with its duties and responsibilities as a trustee, the DWS Parties may have a claim against Wells Fargo for breach of fiduciary duty. Because Wells Fargo's interpleader complaint seeks to "restrain Interpleader

---

[35]   Answer, Crossclaim & Counterclaim ¶ 54.

10

Defendants . . . from commencing or prosecuting any separate proceeding against Wells Fargo concerning or relating to the issues in this action," the merits of this claim may properly be considered as part of this action.[36]

## IV. CONCLUSION

For the foregoing reasons, Bedford's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to close this motion (Docket No. 36). A conference is scheduled for March 25, 2014 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         March 6, 2014

---

[36]   Compl., Plea for Relief ¶ (ii).

11

## - Appearances -

**For Interpleader Plaintiff, Wells Fargo:**

Carolyn Renee O'Leary, Esq.
Michael Edward Johnson, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, New York  10016
(212) 210-9429

**For Interpleader Defendants, the DWS Parties:**

Thomas H. Golden, Esq.
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

**For Interpleader Defendant, Bedford:**

Danielle C. Lesser, Esq.
Latisha V. Thompson, Esq.
Y. David Scharf, Esq.
Morrison Cohen, LLP
909 Third Avenue
New York, New York  10022
(212) 735-8600

**For Interpleader Defendant, Northwestern:**

Vincent Bauer, Esq.
Law Offices of Vincent. E. Bauer
475 Park Avenue South
New York, New York 10016
(212) 575-1517