UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as trustee,

            Interpleader Plaintiff,

    - against -

DAVIDSON KEMPNER CAPITAL
MANAGEMENT LLC, WATERFALL
ASSET MANAGEMENT LLC, THE
NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, STS
PARTNERS FUND, LP, BEDFORD
CMBS ACQUISITIONS LLC, CEDE &
CO., as holder of certain Certificates and
nominee name of The Depository Trust
Company, and DOES 1 through 50, holders
of beneficial interests in the Certificates,

            Interpleader Defendants.

————————————————————————X

**OPINION AND ORDER**

13 Civ. 5981 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    **BACKGROUND**

        Wells Fargo Bank, National Association ("Wells Fargo") instituted

this interpleader action to determine the proper disposition of certain pooled

securities under its trusteeship.[1]  The interpleader defendants are certificateholders

bound by the trust document (the "Pooling Agreement").[2]  Davidson Kempner

Capital Management LLC, Waterfall Asset Management LLC, and STS Partners

Fund, LP (together, the "DWS Parties") dispute Bedford CMBS Acquisitions

LLC's ("Bedford") right to purchase certain securities pursuant to the Pooling

Agreement.

### A.     Factual Background

Bedford is currently the "Directing Securityholder,"[3] a title given to

the majority holder of the most junior class that has an outstanding certificate

balance of at least twenty-five percent of the initial certificate balance.[4]  Pursuant

to section 7.13 of the Pooling Agreement, the Directing Securityholder has an

assignable option to purchase a pooled security that has been deemed defaulted or

imminently defaulted.[5]  The option price is either:  "(i) if the Trustee has not yet

---

[1]     *See* Commercial Mortgage-Backed Securities Pass-Through
Certificates, Series 2006-RR2 Pooling Agreement ("Pooling Agreement"), Ex. 1 to
12/20/13 Declaration of Danielle C. Lesser, counsel for Bedford, in Support of
Bedford's Motion to Dismiss ("Lesser Decl."), § 2.01.

[2]     *See* Second Amended Interpleader Complaint ("Compl.") ¶¶ 5–10.

[3]     *Id.* ¶ 8.

[4]     *See* Pooling Agreement § 1.01 (defining "Directing Securityholder").

[5]     *See id.* § 7.13.

determined the Fair Value of the [defaulted security], the unpaid principal amount thereof plus accrued and unpaid interest thereon," or "(ii) if the Trustee has made a Fair Value determination, the Fair Value of the" defaulted security as determined by the trustee in accordance with the procedures outlined in section 7.13.[6]

"If the Directing Securityholder has not provided notice to the Trustee of its exercise of the Purchase Option within 10 Business Days of its receipt of notice that a [certificate has become a defaulted security], the Purchase Option calculated pursuant to clause (i) above will be deemed to be irrevocably waived . . . ."[7]  If a Directing Securityholder has received notice of the Fair Value determination, but "does not provide notice to the Trustee of its exercise of the Purchase Option within 10 Business Days of its receipt of the notice of the determination of the Fair Value . . . the Purchase Option will be deemed to be irrevocably waived with respect to the [defaulted security]."[8]

In July 2013, the Directing Securityholder previous to Bedford requested and received a Fair Value determination for certain defaulted securities.[9]

---

[6]     *Id.*

[7]     *Id.*

[8]     *Id.*

[9]     *See* Compl. ¶ 15.

The then Directing Securityholder exercised its purchase option as to twelve of these securities, but did not exercise its option to purchase the remaining Securities (the "Disputed Securities") within ten business days of receipt of the Fair Value determination.[10]

"On August 9, 2013, Bedford notified Wells Fargo that it had become the Directing Securityholder."[11] Four days later, it requested a Fair Value determination for the Disputed Securities.[12] "On August 20, 2013, Wells Fargo provided Bedford with notice of the Fair Value of the Disputed [Securities]."[13] The next day, Bedford notified Wells Fargo that it intended to exercise its purchase option with regard to the Disputed Securities.[14] Wells Fargo "acknowledged receipt" of the purchase notice and "acknowledged the feasibility of a closing schedule proposed by Bedford."[15] The DWS Parties and The Northwestern Mutual

---

[10]   *See id.*

[11]   *Id.* ¶ 16.

[12]   *See id.* ¶ 17.

[13]   *Id.* ¶ 18.

[14]   *See id.* ¶ 19.

[15]   *Id.* ¶ 20.

-4-

Life Insurance Company[16] subsequently informed Wells Fargo that they objected to Bedford's purchase of the Disputed Securities on the ground that the previous Directing Securityholder irrevocably waived the option to purchase these securities.[17]

Section 7.02 of the Pooling Agreement states, "No Certificateholder shall have any right to . . . control the operation and management of the Trust Estate, or the obligations of the parties hereto . . . ."[18] It further states, "Except in the case of an action, suit, or proceeding against the Trustee in respect of a breach or alleged breach of its duties and responsibilities hereunder, no Certificateholder shall have any right by virtue of any provisions of this Pooling Agreement to institute any action, suit, or proceeding in equity or law upon or under or with respect to this Pooling Agreement" unless the Certificateholder has given Wells Fargo written notice, and the holders of two-thirds of the same certificate class

---

[16]    Although it has not submitted an amended answer, or supplemental briefing, Northwestern has previously opposed Bedford's motion adopting the DWS Parties' arguments. *See* Northwestern's Memorandum in Opposition to Bedford's Motion for Judgment on the Pleadings.

[17]    *See* Compl. ¶ 21.

[18]    Pooling Agreement § 7.02.

have also made written request on and offered to indemnify Wells Fargo.[19] It is undisputed that these conditions were not met by the DWS Parties.

## B.    Procedural History

Wells Fargo initiated this interpleader action, contending that the Pooling Agreement is "ambiguous with respect to Bedford's right to exercise the Purchase Option with respect to the Disputed [Securities],"[20] and claiming that it cannot determine the proper disposition of the Disputed Securities "without hazard to itself."[21] This Court issued an opinion on March 6, 2014 granting Bedford's motion for judgment on the pleadings on the ground that the previous Directing Securityholder had not been issued a Fair Value Determination for the Disputed Securities, and thus could not have waived an option to purchase those securities at the Fair Value price.[22]

On March 25, the Court granted the DWS Parties' motion for reconsideration in light of newly produced evidence that a Fair Value

---

[19]    *Id.*

[20]    *Id.* ¶ 23.

[21]    *Id.* ¶ 1.

[22]    *See Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, No. 13 Civ. 5981, 2014 WL 896741 (S.D.N.Y. Mar. 6, 2014) (the "March 6 Opinion"). Familiarity with the March 6 Opinion is presumed for purposes of this Motion.

-6-

Determination was, in fact, issued to the previous Directing Securityholder.  In its Second Amended Complaint, Wells Fargo has asked the Court to: (1) order the interpleader defendants to settle all claims regarding Bedford's rights to exercise the Purchase Option in respect to the Disputed Securities; (2) restrain the interpleader defendants from claiming any interest in the Disputed Securities, or from bringing separate suit against Wells Fargo; and (3) to award Wells Fargo its costs.  Bedford and the DWS Parties bring cross motions for judgment on the pleadings.

## II.    APPLICABLE LAW

### A.    Legal Standard

At any time after the pleadings are closed, but before trial commences, a party may move for judgment on the pleadings under Rule 12(c).[23]  "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'"[24]

---

[23]    *See* Fed. R. Civ. P. 12(c).

[24]    *Dargahi v. Honda Lease Trust*, 370 Fed. App'x 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

"[T]he legal standards of review for motions to dismiss and motions for judgment on the pleadings 'are indistinguishable.'"[25] "On a motion to dismiss or for judgment on the pleadings [courts] 'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"[26] Courts are not bound to accept as true legal conclusions couched as factual allegations.[27] The court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[28]

**B.    Applicable Law**

Under New York law, "'[t]he initial interpretation of a contract is a matter of law for the court to decide.'"[29] The court's "'fundamental objective' is to

---

[25]    *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003)).

[26]    *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

[27]    *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[28]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[29]    *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009) (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)).

-8-

determine the intent of the contracting parties 'as derived from the language employed in the contract.'"[30]  "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned."[31]  "Under New York law, waiver of rights under a contract 'should not be lightly presumed.'"[32]

"An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer."[33] "Once the optionee gives notice of his intent to exercise the option in accordance with the agreement, the unilateral option agreement ripens into a fully enforceable bilateral contract."[34]  However, under New York law, strict adherence to the terms

--------

[30]   *Consolidated Edison, Inc. v. Northeast Util.*, 426 F.3d 524, 527 (2d Cir. 2005) (quoting *Abiele Contracting v. New York City Sch. Constr. Auth.*, 91 N.Y.2d 1, 9 (1997)).

[31]   *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (citing *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982)).

[32]   *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (quoting *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966 (1988)).

[33]   Restatement (Second) of Contracts § 25 (1981).

[34]   *Kaplan v. Lippman*, 75 N.Y.2d 320, 325 (1990) (citing *Cochran v. Taylor*, 273 N.Y. 172, 183 (1937); *Bullock v. Cutting*, 140 N.Y.S. 686 (3d Dep't 1913).

of an option is required,[35] and "a notice exercising an option is ineffective if it is not given within the time specified."[36]

## III.   DISCUSSION

As discussed in the March 6 Opinion, and at the March 25 conference, the Purchase Option for the Disputed Assets was waived by the previous Directing Securityholder's failure to exercise its option to purchase within ten business days of receiving a Fair Value determination.  Therefore, under the terms of the Pooling Agreement, Bedford had no valid purchase option as to the Disputed Securities. The Court now considers two arguments not addressed in the March 6 Opinion.

*First*, Bedford argues that a binding contract exists because: (1) Bedford complied with the procedures laid out in the Pooling Agreement; and (2) Wells Fargo acknowledged receipt of Bedford's notice of intent to exercise the purchase option at the Fair Value price.  Wells Fargo disputes that a binding agreement was created when it acknowledged receipt of notice.[37]  The DWS Parties

---

[35]      *See* 15 Richard A. Lord, Williston on Contracts § 46:12 (4th ed. 1990).

[36]      *J. N. A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 396 (1977) (citing *Sy Jack Realty Co. v. Pergament Syosset Corp.*, 27 N.Y.2d 449 (1971)).

[37]      *See* Compl. ¶ 20.

argue that no contract was created because the purchase option which Bedford

sought to exercise had already been waived.

Bedford believes that a binding bilateral contract for purchase of the

Disputed Securities exists because it adhered to all conditions precedent as outlined

in the Pooling Agreement when giving notice of its intent to exercise.  Cases cited

by Bedford in support of this claim reiterate that "[a]n option is an irrevocable

offer to sell which becomes a binding contract of sale on acceptance by the

optionee."[38]  Bedford's citation to this principle puts the cart before the horse by

presuming that a valid option exists.[39]  Here, under the terms of the Pooling

Agreement, the previous Directing Securityholder irrevocably waived the option to

purchase the Disputed Securities by requesting and receiving a Fair Value

determination and then failing to exercise its option to purchase those securities

---

[38]    *Texas Co. v. Z. & M. Indep. Oil Co.*, 156 F.2d 862, 865 (2d Cir. 1946).

[39]    *See Novello v. 215 Rockaway, LLC*, No. 2426-07, 2008 WL 412625 (Sup. Ct. Nassau Cty. Feb. 5, 2008) ("[O]nce a tenant gives notice of intent to exercise a purchase option *in accordance with the lease*, 'the unilateral option agreement ripens into a fully enforceable bilateral contract.'" (quoting *Kaplan v. Lippman*, 75 N.Y.2d 320 (1990)) (emphasis added)).  Other cases cited by Bedford are simply inapposite.  *See Brainstorms Internet Mktg., Inc. v. USA Networks, Inc.*, 775 N.Y.S.2d 844, 844 (2004) ("[Defendant], by sending e-mail to plaintiffs setting closing date for its purchase of remaining [portion] of plaintiffs' business, did, in fact, exercise purchase option accorded it in the parties' purchase agreement pursuant to the agreement's terms.").

-11-

within ten business days. Wells Fargo's receipt of notice of Bedford's intent to exercise the purchase option could not create a binding contract where there was no valid option to exercise. Bedford's strict adherence to the other conditions in the Pooling Agreement did not give rise to a binding contract because the purchase option as to the Disputed Securities had already been irrevocably waived.

*Second*, Bedford argues that Section 7.02 of the Pooling Agreement bars the DWS parties from contesting the validity of the purchase option and asserting their counterclaims. The DWS Parties argue that they have not "instituted" an "action, suit, or proceeding," or asserted rights under the Pooling Agreement to contest Bedford's purchase of the Disputed Assets, as they are merely responding to Wells Fargo's interpleader action.[40] Because the language of section 7.02 clearly contemplates "institut[ing]" an action, it cannot be construed to preclude the DWS Parties from defending an interpleader action. Thus, the DWS Parties' affirmative defenses and cross-motion for judgment on the pleadings are not barred by section 7.02.[41]

---

[40]     DWS Parties' Supplemental Memorandum of Law ("DWS Supp. Mem.") at 2–3.

[41]     I need not reach the effect of section 7.02 on the DWS Parties' first counterclaim, which is largely duplicative of its affirmative defenses. Nor need I reach the second counterclaim, which was pled in the alternative.

*Finally,* Wells Fargo's duties as trustee under the Pooling Agreement include the administration of purchase options.  Wells Fargo created this controversy by taking steps that led Bedford to conclude that it had a valid purchase option.  Wells Fargo then chose to institute this interpleader action rather than seeking to amend the Pooling Agreement to cure the perceived ambiguity.[42]  Because Wells Fargo instituted this action, and the controversy arose from its actions as trustee, Wells Fargo is not entitled to recover any fees or costs not contemplated in the Pooling Agreement.

## IV.   CONCLUSION

For the foregoing reasons, Bedford's motion for judgment on the pleadings is DENIED.  The DWS Parties' cross -motion for judgment on the pleadings is GRANTED.  The Clerk of the Court is directed to close this motion (Docket No. 36) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           May 12, 2014

_____

[42]      *See* Pooling Agreement § 7.01.

-13-

- Appearances -

**For Interpleader Plaintiff, Wells Fargo:**

Carolyn Renee O'Leary, Esq.
Michael Edward Johnson, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, New York  10016
(212) 210-9429

**For Interpleader Defendants, the DWS Parties:**

Michael Andrew Hanin, Esq.
Henry Bowen Brownstein, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Thomas H. Golden, Esq.
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

**For Interpleader Defendant, Northwestern:**

Vincent Bauer, Esq.
Law Offices of Vincent. E. Bauer
475 Park Avenue South
New York, New York 10016

**For Interpleader Defendant, Bedford:**

Danielle C. Lesser, Esq.
Latisha V. Thompson, Esq.
Y. David Scharf, Esq.
Morrison Cohen, LLP
909 Third Avenue
New York, New York  10022
(212) 735-8600

**For Interpleader Defendant, Cede & Co. :**

Eric P. Heichel, Esq.
Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C.
805 Third Avenue
New York, New York 10022
(212) 752-1000

-14-